UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

**File No. 12-cv-499 (PJS/TNL)**

GUSTAVO LOURIDO-VIDAL

      Plaintiff,               **REPORT AND RECOMMENDATION**

v.

SCOTT P. FISHER, Warden,


      Respondent.

---

Gustavo Lourido-Vidal, Pro Se, F.C.I. Sandstone, P.O. Box 1000, Sandstone, MN 55072.

D. Gerald Wilhem, Assistant United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN 55414, for Respondent.

---

TONY N. LEUNG, United States Magistrate Judge.

## I.    INTRODUCTION

    This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 By A Person In Federal Custody. [Doc. No. 1.] Petitioner Gustavo Lourido-Vidal ("Petitioner") is an inmate presently confined at the Federal Correctional Institution at Sandstone, Minnesota ("FCI-Sandstone") (Declaration of Angela Buege ("Buege Decl."), Attach. A, [Doc. No. 5.]) Petitioner is serving an

84-month sentence imposed by the United States District Court for the District of Puerto Rico following his conviction for Conspiracy to Possess with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(b) and 846.  (*Id.*)  Petitioner has a projected release date of January 1, 2015, with good conduct time credit ("GCT").  (*Id.*)

Petitioner brings the present action following the loss of good-time credit as a result of a prison disciplinary action, and alleges violation of his due process rights under the United States Constitution.  Respondent opposes the Petition, asserting that there is sufficient evidence to support the loss of good-time credit, and Petitioner was afforded all of the due process to which he was entitled.  (United States' Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ("Resp.") [Doc. No. 3.])  Petitioner filed a Reply, which contains a request for discovery and objections to hearsay in the Response.  (Reply [Doc. No. 9.])

This action has been referred to the undersigned magistrate judge for report and recommendation to the District Court under 28 U.S.C. § 636 and D. Minn. LR 72.2(b).  For the reasons stated below, IT IS HEREBY RECOMMENDED that the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody [Doc. No. 1] be DENIED; and this action be DISMISSED WITH PREJUDICE.

## II.     BACKGROUND

### A.     The Incident Report and Disciplinary Procedures

When a Bureau of Prisons ("BOP") staff member witnesses or has a reasonable belief that an inmate committed a prohibited act, the staff member issues an incident report.  28 C.F.R. § 541.14 (2010).  After the inmate receives the incident report, a BOP staff member investigates.  *Id.* at § 541.14(b).  The investigator informs the inmate of the charges against him and of his

right to remain silent, and gives the inmate an opportunity to provide a statement. *Id.* at § 541.14(b)(2).

After the investigation, a Unit Discipline Committee ("UDC") reviews the incident report. 28 C.F.R. § 541.15 (2010). The UDC usually consists of one or more staff members who were not significantly involved in the incident. *Id.* at § 541.15(b). Ordinarily, the inmate may appear before the UDC at the time it reviews the incident report. *Id.* at § 541.15(c). The inmate may make a statement or present documentary evidence. *Id.* at § 541.15(d). The UDC may then refer the incident report to the Discipline Hearing Officer ("DHO"), based on the seriousness of the prohibited acts. *Id.* at § 541.15(h).

The DHO will conduct a hearing and may determine whether the inmate committed the prohibited act. 28 C.F.R. § 541.17(f) (2010). The DHO may not be the reporting officer, a witness, investigating officer, a UDC member or someone who played any significant part in having charges referred to the DHO. *Id.* at § 541.16(b). The inmate must be provided written notice of the DHO hearing at least 24 hours in advance. *Id.* at § 541.17(a). The inmate is entitled to have a staff representative at the hearing and may choose the staff member as long as that person was not a victim, a witness, the warden, a DHO, a UDC member, an investigating officer or otherwise significantly involved in the incident. *Id.* at § 541.17(b). Ordinarily, the inmate is permitted to appear at the DHO hearing. *Id.* at § 541.17(d). The inmate may make a statement and present documentary evidence at the hearing. *Id.* at § 541.17(c). The inmate or his staff representative may request that witnesses appear, and witnesses will be allowed at the DHO's discretion based on their availability, whether their presence would jeopardize institutional security, and whether they would present repetitive evidence. *Id.* The DHO need

not call witnesses who are adverse to the inmate if their testimony is adequately summarized in the incident report. *Id.*

The DHO must prepare a written report of his decision. *Id.* at § 541.17(g). The written report must contain the DHO's decision, the evidence relied on, the sanction imposed, the reasons for the sanction imposed, and whether the inmate was advised of his rights at the hearing. *Id.* The inmate may appeal the DHO's decision through the Administrative Remedy Program. *Id.* at § 541.19.

The relevant events began in the Federal Correctional Center in Williamsburg, South Carolina ("FCI-Williamsburg") on October 28, 2010, when Petitioner received an incident report for possession of a cell phone, in violation of Code 108 of BOP policy. (Pet. at 2 [Doc. No. 1]; Buege Decl., Attach. B.) According to the incident report, Officer Egan ("Egan") observed Petitioner talking on a cell phone while sitting on the bleachers near the soccer field, and upon searching Petitioner, Egan discovered the cell phone "located in his left pocket." (Buege Decl., Attach. B). To the contrary, Petitioner asserts he was seated on the bleachers reading a newspaper when confronted by Egan, who asked him to submit to a pat-down search. (Lourido Decl. ¶ 2 [Doc. No. 1-1]; Lourido Supp. Decl. ¶ 1 [Doc. No. 10].) According to Petitioner, after performing the search, Egan went under the bleachers and retrieved a cell phone, claiming it belonged to Petitioner. (*Id.*)

Petitioner was taken to the Special Housing Unit ("SHU"), where he met with Lieutenant J. Delmanzano ("Delmanzano"), the investigating officer. (Lourido Decl. ¶ 3.) Delmanzano processed Petitioner into the SHU, which included taking possession of the athletic shorts Petitioner was wearing at the time of the incident. (Lourido Decl. ¶ 3; Lourido Supp. Decl. ¶ 2.)

Delmanzano delivered the incident report to Petitioner, advised Petitioner of his institutional rights, and read the charges to Petitioner. (Buege Decl., Attach. B.) Delmanzo recorded on the incident report that Petitioner said he understood his rights. (*Id.*) Delmanzano also recorded the following statement made by Petitioner in response to the charge, "I was reading a newspaper when the officer came up behind me and pointed to the ground. There was a cell phone underneath me where I was sitting. The cell phone is not mine, I was just reading a paper." (*Id.*)

Petitioner alleges he told Delmanzano that his shorts did not have any pockets, so Egan's story about finding the cell phone in his pocket was not true. (Lourido Decl. ¶ 3.) Petitioner alleges that he overheard Delmanzano call Egan and tell him that the shorts did not have any pockets. (Lourido Decl. ¶ 3; Lourido Supp. Decl. ¶ 2.) Petitioner alleges Delmanzano then told him that Egan said the phone was in his shirt pocket. (Lourido Decl. ¶ 4; Lourido Supp. Decl. ¶ 2.)

On November 2, 2010, the Unit Discipline Committee ("UDC") conducted a hearing on the incident. (Buege Decl., Attach. B.) According to Petitioner, Ms. M. Varro ("Varro") was "the chief UDC officer," although in his Reply, he alleges only that she was present at the UDC hearing. (Pet. at 9-10; Lourido Decl. ¶ 6; Lourido Supp. Decl. ¶¶ 4, 5.) Respondent asserts the UDC was comprised of staff members Dirk Aucker and Angela Altman, and Varro was not a member of the UDC. (Buege Decl., Attach. B.) Petitioner alleges Varro told him at the UDC hearing that he had nothing to worry about if his shorts did not have pockets. (Lourido Supp. Decl. ¶ 4.) At the UDC hearing, Petitioner stated the incident report was false. (Buege Decl., Attach. B.)

The UDC referred the incident report to a DHO, and recommended that if a rule violation was found, Petitioner should lose GCT and privileges, and receive a disciplinary transfer. (*Id.*)

Petitioner was provided the form "Inmate Rights at Discipline Hearing" and "Notice of Discipline Hearing Before the DHO." (Buege Decl., Attach. C.) At the time of the UDC hearing, Petitioner requested that his case manager, Varro, serve as his staff representative at the DHO hearing, and he did not request any witnesses. (*Id.*) Varro signed the form "Duties of a Staff Representative" on November 2, 2010. (Buege, Attach. D.)

The DHO hearing was held on November 10, 2010, before Dontess Dennis, acting as DHO. (Declaration of Dontess Dennis ("Dennis Decl.") ¶ 2, Attach. A [Doc. No. 4]; Pet., Ex. A.)[1] According to Respondent, Petitioner spoke to Dennis in English and said he understood his rights, had no evidence to present, and said he did not request any witnesses or a staff representative. (Dennis Decl. ¶ 2, Attach. A.) Petitioner alleges Varro served as his staff representative over his objection, and Respondent asserts Varro was summoned to serve as Petitioner's staff representative after Petitioner changed his mind and requested that she appear. (Dennis Decl. ¶ 2, Lourido Decl. ¶ 8.) In Petitioner's December 7, 2010 administrative appeal, however, Petitioner argued that the DHO Report contained errors, including where it showed no staff representative was asked for at the DHO hearing. (Pet., Ex. B.) Petitioner wrote "I did and one appeared." (*Id.*) In a narrative that he attached to his appeal on December 7, 2010, Petitioner complained that the DHO Report was full of errors, including the statement that Varro had advised him of his rights. (*Id.*) Contrary to his statement that Varro was at the UDC hearing, Petitioner added, "[s]he did not advise me I never saw her until DHO." (*Id.*)

At the DHO hearing, Petitioner requested an interpreter because he prefers to speak in Spanish, and staff member Jonathon Morris served as a translator. (Dennis. Decl. ¶ 4, Attach.

---

[1] Dennis asserts the DHO report is in error where it states Varro advised Petitioner of his rights before the DHO hearing. (Dennis Decl. ¶ 2.) He also asserts the DHO report is in error where it states the offense was possession of a weapon; it should have read possession of a hazardous tool, a cell phone. (*Id.*)

A.) Petitioner alleges the interpreter did not speak the same dialect of Spanish, and the translation was faulty. (Lourido Decl. ¶ 7; Dennis Decl. ¶ 4.) Petitioner denied the charge and said the cell phone was found under the bleachers. (Dennis Decl. ¶ 5, Attach. A.) Respondent asserts Petitioner did not request witnesses or ask to present any evidence. (*Id.*) Petitioner alleges his requests to call Delmanzano as a witness and to present evidence of the shorts he was wearing at the time of the incident were denied. (Lourido Decl. ¶ 10.)

In finding that Petitioner committed the prohibited act, the DHO relied on the reporting officer's statement that he saw Petitioner talking on a cell phone and found the cell phone when he searched Petitioner's "left pants pocket." (Dennis Decl. ¶ 6, Attach. A.) The DHO imposed a penalty of 45 days in disciplinary segregation, 40 days loss of good conduct time, 20 days loss of non-vested good conduct time, 365 days loss of visitation and phone privileges, and recommended disciplinary transfer. (Dennis Decl. ¶ 7.) Petitioner alleges the DHO was not going to recommend disciplinary transfer but did so because Varro told him he must. (Lourido Decl. ¶ 11.) The DHO advised Petitioner of his administrative remedy appeal rights. (Dennis Decl. ¶ 8, Attach. A.) The DHO signed the report of his findings on November 15, 2010, and the report was delivered to Petitioner on November 18, 2010. (*Id.*)

**B.  Exhaustion of Administrative Remedies**

Following the hearing, Petitioner alleges he asked for a BP-10 administrative appeal form, and it was not provided to him until December 7, 2010. (Lourido Decl. ¶¶ 12, 13.) Officer Toro informed Petitioner that the appeal would be timely if it was mailed that day. (Lourido Decl. ¶ 13.) The report was signed on November 18, 2010, and the BP-10 was mailed to the Southeast Regional Headquarters on December 7, 2010. (Lourido Decl. ¶¶ 12, 13.) On

December 21, 2010, Petitioner's BP-10 appeal was rejected as untimely. (Buege Decl. ¶ 9, Attach. E.)

Petitioner was ordered to be transferred and physically arrived at FCI Sandstone, Minnesota on February 24, 2011. (Pet. at 4.) Petitioner appealed the denial of his BP-10 to the BOP Central Office, and it was received on March 28, 2011. (Buege Decl. ¶ 9, Attach. E.) The Central Office rejected Petitioner's appeal as untimely on April 26, 2011. (*Id.*) The Central Office advised Petitioner that he could try to obtain a memorandum from staff on institutional letterhead, explaining why the untimely filing was not Petitioner's fault, and then file another regional appeal with supporting documentation. (*Id.*)

On May 6, 2011, Inmate Counselor S. Glerum ("Glerum") attested to the fact that the initial BP-10 filing was untimely due to Petitioner's housing situation. (Pet., Ex. D.) According to Petitioner, Glerum instructed him to file the BP-10 in the place of origin, i.e., the Southeast Regional Office. (Pet. at 4.) The Southeast Regional Office rejected the appeal on June 3, 2011, because Petitioner was no longer incarcerated in that region. (Buege Decl., Attach. E.) Petitioner subsequently submitted the BP-10 to the North Central Regional Office, where it was rejected as untimely on June 17, 2011. (*Id.*) The Central Office then denied Petitioner's appeal on August 9, 2011. (Buege Decl. ¶ 10.) The BOP does not retain rejected remedy requests, so Respondent is unaware if Petitioner submitted his memorandum from Glerum with his subsequent appeals. (Buege Decl. ¶ 9.) Respondent admits that further attempts at exhaustion may be futile. (Resp. at 10.)

### C. The Petition, Response and Reply

On February 27, 2012, Petitioner filed the present habeas corpus petition. First, he asserts he should not be held to the exhaustion of administrative remedies because prison staff

caused his untimely filing of administrative appeals. (Pet. at 8.) Second, he contends he was denied his right to due process because the DHO was not impartial. (Pet. at 8-10.) In support of this argument, Petitioner alleges the DHO appointed Varro as his staff representative over his objection, and this violated 28 C.F.R. § 541.8(d), which precludes a UDC Officer from serving as a staff representative. (Pet. at 9.) Petitioner alleges Varro refused to inform the DHO that the shorts he had been wearing at the time of the incident did not have pockets. (*Id.* at 9-10.) Petitioner alleges Varro knew the shorts did not have pockets, and she failed to obtain a statement from Delmanzo, the property officer in the SHU who could have verified that fact. (*Id.*)

Third, Petitioner contends his right to due process was violated because he was not allowed to present the shorts he was wearing at the time of the alleged incident as evidence. (Pet. at 10-11.) Petitioner contends Varro told him he could only present documentary evidence, and Delmanzano could not be a defense witness because he served the incident report. (Pet. at 11.) Based on the Fourth Circuit case, *Young v. Lynch*, 846 F.2d 960, 963 (4th Cir. 1988), Petitioner asserts he had a due process right to present physical evidence at the hearing because "it [was] the dispositive item of proof, it [was] critical to the inmate's defense, it [was] in the custody of prison officials, and it could be produced without impairing institutional concerns." (Pet. at 10-11.) Petitioner further contends the DHO was not impartial because the DHO overlooked regulatory violations and misconduct by Varro. (Pet. at 11-12.)

Respondent contends Petitioner was afforded all required elements of due process for a prison disciplinary hearing: 1) he was given advance written notice of the hearing on November 2, 2010; 2) the DHO hearing was conducted eight days after Petitioner was provided advance written notice; 3) Petitioner requested and was provided a staff representative, but he did not

request any witnesses or to present documentary evidence.  (Resp. at 12-13.)  Respondent asserts the DHO was impartial because he was not a witness to the incident, did not write the incident report, did not investigate the matter, and was not a member of the UDC.  (Resp. at 13.)  Furthermore, Petitioner was presented with a copy of the DHO written decision, stating the specific evidence relied on and reasons for the sanctions.  (*Id.*)

Respondent asserts the Fourth Circuit case relied on by Petitioner in asserting his right to present physical evidence cautioned that it was *not* "to be read to require the production of real evidence in every disciplinary proceeding."  (Resp. at 13, quoting *Young v. Lynch*, 846 F.2d 960, 963 (4th Cir. 1998)).  Respondent also asserts Petitioner's shorts would not have been dispositive evidence in this case because he was seen talking on a cell phone and a search revealed the phone was concealed in his clothing.  (Resp. at 13-14.)  Respondent further asserts Petitioner failed to establish that he could not understand the disciplinary charge against him or could not participate in the hearing, due to the allegedly poor translation between English and Spanish.  (Resp. at 15.)  Finally, Respondent contends the evidence was sufficient to support the DHO's finding that Petitioner violated a rule, namely that the weight of the evidence showed Petitioner had possession of a cell phone.  (Resp. at 15-17.)  Respondent asserts an evidentiary hearing is unnecessary here because there is evidence in the record supporting the finding of the DHO.  (Resp. at 18.)

Petitioner filed a Reply.  [Doc. No. 9.]  First, Petitioner seeks permission from the Court to serve Requests for Admission on Respondent to determine whether FCI Williamsburg rewards staff for writing incident reports based on discovery of cell phones on the premises.  (Reply at 4.)  Second, Petitioner asks the Court to require authentication of attachments in Respondent's declarations and objects to hearsay statements in Respondent's Declarations.  (Reply at 5-9.)

Petitioner contends that despite the written evidence, Varro was present at the UDC hearing, although she did not sign the hearing form. (Reply at 14-16.)

## III. DISCUSSION

### A. Standard of Review

Prisoners retain rights under the Due Process Clause of the Constitution, but not the full panoply of rights a defendant in a criminal prosecution receives. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Due process applies to the BOP through the Fifth Amendment, providing procedural protections against arbitrary government actions that infringe an individual's life, liberty or property interest. U.S. Const. amend. V. A prisoner has a "liberty" interest, created by statute and/or regulation, in the right to good time credit, entitling the prisoner to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause" to insure the right is not arbitrarily denied. *Wolff*, 418 U.S. at 557. Due Process requires that the inmate must receive advance written notice of the claimed violation, and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 563. The inmate "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566.

The *Wolff* court held due process does not require that an inmate have a right to confront or cross examine witnesses furnishing evidence against him or that the inmate be represented by counsel at the prison disciplinary hearing. *Id.* at 567-68. If an inmate is illiterate or the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence "for an adequate comprehension of the case," he should be able to seek assistance from another inmate or a staff member. *Id.* at 570.

The *Wolff* court also held that the adjustment committee, which conducted the disciplinary hearings in the Nebraska Prison Complex, was "sufficiently impartial to satisfy the Due Process Clause," noting the composition of the committee and that it was not "left at large with unlimited discretion." *Id.* at 570-71 and 592 (Marshall, J., concurring) (stating that "an impartial decisionmaker is a fundamental requirement of due process" applicable to prison disciplinary hearings); *see Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993) ("the *Wolff* hearing ensures that the inmate has an opportunity to persuade an impartial decisionmaker . . . that discipline is not warranted."); *Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008) ("The Supreme Court has outlined procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter." (citing *Wolff*, 418 U.S. at 563-66)).

"The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action." *Superintendent, Mass. Corr. Instit., Walpole v. Hill*, 472 U.S. 445, 454 (1985). The decision to revoke good time credits must be supported by some evidence in the record. *Id.* "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Determining whether the "some evidence" standard has been met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

### B.    Analysis

#### 1.    Further attempts at exhausting administrative remedies would be futile.

The BOP has established an administrative remedy program to address any prisoner concerns relating to aspects of confinement. 28 C.F.R. § 542.10(a) (2013). DHO appeals are exempted from informal resolution and must be initially submitted, on form BP-10, to the

Regional Director for the region where the inmate is currently located. *Id.* at §§ 542.14(d); 542.15(b). If the Regional Director's response is unsatisfactory, the inmate may appeal, on form BP-11, to the General Counsel at the Central Office. *Id.* at § 542.15(a), (b). Time for appeals may be extended when the inmate demonstrates a valid reason for delay. *Id.* at § 542.15(a). "Appeal to the General Counsel is the final administrative appeal." *Id.*

The requirement to exhaust administrative remedies before bringing a § 2241 habeas petition is judicially created and is not jurisdictional. *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007), *cert. denied*, 552 U.S. 1121 (2008). Therefore, courts may create exceptions to administrative exhaustion, and have done so when failure to exhaust would have been futile. *Frango v. Gonzales*, 437 F.3d 726, 728-29 (8th Cir. 2006); *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004); *Lopez v. Fisher*, Civil No. 10-3928 (PJS/SER), 2011 WL 3438861, at *3 (D. Minn. July 18, 2011) (exhaustion was futile where appeal to Central Office was unlikely to be successful); *Anderson v. Outlaw*, No. 2:11-cv-00013-JLH-BD, 2011 WL 1480048, at *2 (E.D. Ark. March 30, 2011) (exhaustion was futile where time limitations involved in claim required court to discuss merits).

Petitioner's appeals at each tier of the administrative remedy program were rejected, stemming from his initial untimely appeal to the Southeast Regional Office. At the invitation of the Central Office, Petitioner obtained appropriate documentation establishing that his untimely filing was not his fault, but unfortunately he filed it with the wrong regional office, apparently based on poor advice from prison staff. Petitioner asserts he included Glerum's memorandum with his subsequent appeal to the proper regional office. Respondent cannot establish that Petitioner did not do so because it does not retain copies of remedy requests that were rejected.

It would be futile for Petitioner to file another appeal. Thus, the Court will reach the merits of the habeas petition.

### 2. Declarations and Attachments to the Response are admissible.

Where material facts are in dispute, the Court has accepted Petitioner's allegations as true. Nonetheless, the Court will address Petitioner's evidentiary objections. Petitioner objects to Respondent's reliance on the business records exception to the hearsay rule for admission of BOP records and also requests authentication of the "hearsay documents." (Reply at 5-6.) Relying on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), Petitioner contends the statements of the declarants and the "documents from which the statements derive" are inherently untrustworthy because they were created in anticipation of litigation. (Reply at 5.)

The Federal Rules of Evidence apply to habeas proceedings. *Armstrong v. Kemna*, 534 F.3d 857, 867 (8th Cir. 2008) (citing Fed. R. Evid. 1101(e)). Authentication for purposes of admissibility is satisfied by evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). A witness who has knowledge that a matter is what the proponent claims it to be may authenticate the matter. Fed. R. Evid. 901(b)(1); *United States v. Two Elk*, 536 F.3d 890, 905 (8th Cir. 2008).

In her declaration, Angela Buege authenticated each attachment by identifying herself as a Paralegal Specialist for the BOP who has knowledge of and access to records maintained by the BOP in the normal course of business, and identifying each such record as a true and accurate copy maintained in the regular course of BOP business including: 1) the Public Information Data; 2) the Incident Report; 3) the forms "Inmate Rights at Discipline Hearing," "Notice of Discipline Hearing Before the DHO," and "Duties of a Staff Representative"; and 4) the Administrative Remedy Generalized Retrieval Data Form. Buege has shown that she is a

custodian of the documents, that the documents were prepared and kept in the ordinary course of the BOP's business, and that the documents were reliable, thus establishing the hearsay exception for the attachments to her declaration. *See* Fed. R. of Evid. 803(6); *U.S. v. Franks*, 939 F.3d 600, 602-03 (8th Cir. 1991) (business record exception to hearsay rule was established by testimony of custodian that the documents were prepared and kept in the ordinary course of a regularly conducted business activity). As to Buege's statements of what these records contain, the Court has not relied on Buege's description of the contents of the records but on the records themselves.

The Declaration of Dontess Dennis contains statements upon which he has personal knowledge from serving as the DHO at Petitioner's DHO hearing. Furthermore, as a DHO, he has knowledge of BOP records created in the course of prison disciplinary hearings. Dennis identified Attachment A to his declaration as the DHO packet kept in the ordinary course of BOP business, relating to the incident and proceedings at issue here. Therefore, this record has been properly authenticated, is reliable, and is admissible as a business record. The Court further notes Petitioner attached a copy of the same DHO packet to his Petition. As to Attachment B to the Dennis Declaration, it contains only repetitive or irrelevant information, and the Court has not considered it.

Finally, *Melendez-Diaz* is distinguishable. In *Melendez-Diaz*, the Supreme Court held the Confrontation Clause of the Sixth Amendment required analysts from a state laboratory to be available for cross examination at trial in order to admit their sworn statements that the substance they analyzed was cocaine. 557 U.S. at 311. The analysts' certificates were not business records excepted from the hearsay rule because they were prepared for use in court, not for a business use. *Id.* at 321. Each of the attachments to Respondent's declarations were prepared for use in

the ordinary course of conducting BOP disciplinary hearings or administering the BOP administrative remedy program, not for future use in responding to a potential § 2241 petition.

### 3.    An evidentiary hearing is unnecessary.

"[G]enerally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Mack v. Caspari*, 92 F.3d 637, 644 (8th Cir. 1996) (quotation omitted). But "[if] the facts a petitioner seeks to prove would not entitle him to habeas relief, then an evidentiary hearing need not be granted." *Francis v. Fabian*, 669 F.Supp.2d 970, 978 (D. Minn. 2009) (citing *Johnston v. Luebbers*, 288 F.3d 1048, 1059 (8th Cir. 2002). A "petition may be summarily dismissed if the record clearly indicates that [the petitioner's] claims are either barred from review or without merit." *Mack*, 92 F.3d at 644 (quotation omitted). For the reasons discussed below, an evidentiary hearing is unnecessary because Petitioner's claims are without merit.

### 4.    There is sufficient evidence supporting the DHO's finding.

Even if the Court assumes Petitioner's due process rights were violated, the error is harmless because Petitioner's exculpatory theory is legally incorrect. *See Mitchell v. Howard*, 419 Fed.Appx. 810, 815 (10th Cir. Mar. 29, 2011) (citing *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 814 n.5 (10th Cir. 2007)); *Griffin v. Brooks*, 13 Fed.Appx. 861, 864 (10th Cir. July 2, 2001). Petitioner believes he would be exonerated if Officer Egan found the cell phone underneath the bleachers where Petitioner was sitting rather than in his pants pocket. The precise location at which the cell phone was found, however, is not dispositive. Because the incident report indicates that Egan saw Petitioner using a cell phone before approaching Petitioner, there is sufficient evidence that Petitioner possessed a cell phone, even if it was found under the

bleachers and not in Petitioner's pocket. The conclusion reached by the DHO need only be supported by "some evidence" on the record. *Hill*, 472 U.S. at 454-56.

> Ascertaining whether the [some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* As stated in the incident report, Egan *observed* Petitioner using a cell phone. This provides the requisite "some evidence" to support the conclusion reached by the DHO. Moreover, there is no genuine issue of fact that a cell phone was found near where Petitioner was observed to have been using one.

Indeed, the "some evidence" standard is met for possession of a cell phone where the reporting officer saw the inmate handling the cell phone but the cell phone was not recovered directly from the inmate. *See, e.g.*, *Allen v. Swarthout*, No. CIV S-10-3257 GEB GGH P, 2011 WL 6046444, at *3, 5 (E.D. Cal. Dec. 5, 2011) (officer saw prisoner holding a bag containing cell phone and tossing the bag toward another area); *Albert-Diaz v. Scism*, Civ. No. 1:10-CV-2457, 2011 WL 950137, at *2, 8 (M.D. Pa. Jan. 20, 2011) (officer observed prisoner passing cell phone to another inmate who tossed it into cubicle where it was recovered); *Doty v. Peters*, No. 1:08-cv-771-DFH-TAB, 2009 WL 437714, at *1 (S.D. Ind. Feb. 20, 2009) (officer saw two prisoners in possession of and handling a cell phone but cell phone was not found on the charged inmate). Because the DHO's conclusion concerning Petitioner's possession of the cell phone was supported by some evidence, this Court recommends dismissing the petition. In the interests of completeness, however, the Court will address Petitioner's alleged due process violations.

### 5. Petitioner was not denied a due process right to present physical evidence or to present Delmanzano as a witness.

It is disputed whether Petitioner asked the DHO to allow him to present physical evidence or to call any witness, but to reach the merits of the claim the Court assumes Petitioner did so. *Wolff* establishes a due process right to present *documentary* evidence when permitting the inmate to do so "will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566 (emphasis added). The Court stated that prison officials "must have the necessary discretion to . . . limit access to other inmates to collect statements or to compile other *documentary* evidence." *Id.* (emphasis added). The *Wolff* court did not find a due process right to present physical evidence.

Even if this Court were to apply Fourth Circuit precedent[2] holding that a prisoner's due process right to present evidence includes physical evidence when it was the dispositive item of proof, critical to the inmate's defense, and in the custody of prison officials, those criteria are not met here. Petitioner's shorts were not critical to Petitioner's defense. First, the DHO could have credited Petitioner's testimony that the cell phone was actually found under the bleachers where he was sitting. Second, Petitioner could have sought a written statement of anyone with knowledge that his shorts did not have pockets, and of course, could have testified himself that his shorts did not have pockets. Again, it must be recalled that there was sufficient evidence to support the DHO's finding regardless of whether the cell phone was found in Petitioner's pocket or on the ground near the bleachers where Petitioner was sitting.

Assuming further that Petitioner asked to call Delmanzo as a witness, prison officials are given wide discretion in determining whether to allow a particular witness. *See id.* ("[t]he unrestricted right to call witnesses from the prison population carries obvious potential for

---

[2] *Young v. Lynch*, 846 F.2d 960, 963 (4th Cir. 1988).

disruption. . .” and “[a]lthough we do not prescribe it, it would be useful for the [decisionmaker] to state its reason for refusing to call a witness.”)  Petitioner alleged he was unable to call Delmanzo as a witness because Delmanzo served the incident report on Petitioner.  (Pet. at 11, Lourido Decl. ¶ 6.)  Delmanzano was the investigator who determined Petitioner was properly charged, thus referring the case for final disposition.  (Buege Decl. Attach. B, Part III – Investigation.)  Because he investigated and concluded that Petitioner was properly charged, Delmanzo would be subject to cross-examination at the hearing.  The *Wolff* court concluded that there is no due process right to cross examine witnesses in prison discipline hearings.  418 U.S. at 567-68.  Thus, Petitioner was given a legitimate reason that he could not call Delmanzano as a witness.

### 6.     The DHO was an impartial decisionmaker.

Petitioner does not assert the DHO himself was biased, but that Petitioner’s staff representative at the DHO hearing had a conflict based on her participation in the UDC hearing. Petitioner also alleges his staff representative did not fulfill her duties of assisting him in gathering and presenting evidence.  Even accepting Petitioner’s disputed allegations that Varro was part of the UDC proceeding, and she was appointed as his staff representative over his objection, due process did not require that Petitioner have a staff representative at the hearing.

Petitioner did not meet the *Wolff* criteria for assistance from a staff representative; he is not illiterate or unable to explain his defense.  “A prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding.”  *Tewell v. Outlaw*, No. 2:08CV00136 SWW/JTR, 2008 WL 4216423, at *4 (E.D. Ark. Sept. 12, 2008) (citing *Hudson v. Hedgepath*, 92 F.3d 748, 751 (8th Cir. 1996)).  It follows that Petitioner has no claim for ineffective assistance from a staff representative at the hearing.  *Bostic v. Carlson*, 884

F.2d 1267, 1274 (9th Cir. 1989); *Figueroa v. Vose*, 57 F.3d 1061, at *1 n. 4 (1st Cir. 1995) (per

curiam) (comparing *Coleman v. Thompson*, 501 U.S. 722, 755 (1991) "because an inmate has no

right to counsel to collaterally attack his conviction, he has no claim for ineffective assistance of

such counsel"); *Jordan v. Wiley*, 411 Fed.Appx. 201, 209 (10th Cir. Feb. 9, 2011) (finding no

viable due process claim about quality of assistance received from staff representative where

inmate was not constitutionally entitled to a staff representative)).    Petitioner has not shown the

DHO was biased based on the participation at the hearing of an alleged ineffective staff

representative.

> **7.  Petitioner has not established he did not understand the charge against him and could not participate in the hearing due to faulty translation by an interpreter.**

An inmate is entitled to an interpreter, if requested, when a liberty interest such as loss of

good time credits is at stake.  *See Gonzales-Perez v. Harper*, 241 F.3d 633, 637-38 (8th Cir.

2001) (where Defendant testified that he believed Petitioner's "English skills were sufficient to

understand and respond to disciplinary hearing," petitioner's right to due process was not

violated).  Here, Petitioner requested and was provided an interpreter, and there is nothing in the

record to support Petitioner's bare assertion of faulty translation; additionally, Petitioner did not

explain what information he suspects was not conveyed due to faulty translation.  *See U.S. v.

Polanco-Gomez*, 841 F.2d 235, 237 (8th Cir. 1988) ("nothing in the record indicates that

[Petitioner] could not understand the interpreter's Spanish translation").  This claim should be

dismissed.

> **8.  Request to expand the record should be denied.**

Petitioner seeks to serve Requests for Admission on Respondent [Doc. No. 8] to prove

Respondent rewards BOP staff for writing incident reports for possession of cell phones, and

specifically that Egan was rewarded in this case.  This Court finds no merit to Petitioner's due

process claims, and this would not change if Respondent had made, or were to make, the admissions Petitioner seeks. Thus, the request to expand the record should be denied.

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.  Petitioner's request to serve Requests for Admission on Respondent should be denied;

2.  Petitioner's objections to Respondent's Declarations and Attachments should be denied; and

3.  The habeas petition should be denied and dismissed with prejudice.


DATE: June___14___, 2013                    _____*s/ Tony N. Leung*_____
                                            TONY N. LEUNG
                                            United States Magistrate Judge


                                            *Lourido-Vidal v. Fisher*
                                            File No. 12-cv-499 (PJS/TNL)



Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be file with the Court before **July 18, 2013**.